1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GLEN ROE,

11            Plaintiff,                          No. 2:11-cv-2003 CKD

12        vs.

13   MICHAEL J. ASTRUE,                           <u>ORDER</u>
     Commissioner of Social Security,
14
              Defendant.
15   _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying his application for Supplemental Security Income ("SSI")

18   under Title XVI of the Social Security Act ("Act").  For the reasons discussed below, the court

19   will deny plaintiff's motion for summary judgment and grant Commissioner's cross-motion for

20   summary judgment.

21   <u>BACKGROUND</u>

22          Plaintiff, born July 24, 1956, applied on September  11, 2006 for SSI benefits,

23   alleging disability beginning August 1, 2000.[1]  Administrative Transcript ("AT") 51, 90-95.

24   Plaintiff alleged he was unable to work due to hand and foot fungus and a "bad back, hip, and left

25   _____

26          [1]  Under the Act, payment of SSI benefits is precluded for any months prior to the month
     the application was filed, regardless of the alleged onset date of disability.

                                          1

knee." AT 106.  In a decision dated April 23, 2010, ALJ L. Kalei Fong, determined that plaintiff

was not disabled.[2]  AT 17-25.  The ALJ made the following findings (citations to 20 C.F.R.

omitted):

> 1.  The claimant has not engaged in substantial gainful activity since September 11, 2006, the application date.
>
> 2.  The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; hypertension; hepatitis C; metacarpal fracture.
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual

---

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

> The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

functional capacity to perform the full range of light work
as defined in 20 CFR 416.967(b).

5.   The claimant is unable to perform any past relevant work.

6.   The claimant was born on July 24, 1956 and was 50 years
old, which is defined as a younger individual 18-49,[3] on the
date the application was filed.

7.   The claimant has at least a high-school education and is
able to communicate in English.

8.   Transferability of job skills is not an issue in this case
because the claimant's past relevant work is unskilled.

9.   Considering the claimant's age, education, work
experience, and residual functional capacity, there are jobs
that exist in significant numbers in the national economy
that the claimant can perform.

10.  The claimant has not been under a disability, as defined in
the Social Security Act, since September 11, 2006, the date
the application was filed.

AT 19-24.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff

not disabled:  (1) the ALJ erred in finding plaintiff's eczema non-severe; (2) the ALJ failed to

fully and fairly develop the record; (3) the ALJ erred in finding plaintiff's subjective complaints

and third party statements not fully credible; and (4) the ALJ erred in determining plaintiff's

residual functional capacity ("RFC").  Plaintiff also contends the Appeals Council erred in

denying plaintiff's request for review of the ALJ's decision because additional evidence

submitted to the Appeals Council should have provided a basis for changing the ALJ's hearing

decision.

/////

---

[3]  The ALJ mischaracterized plaintiff as a "younger individual "and applied grid rule
202.20 to find plaintiff not disabled.  Plaintiff's age of 50 places him in the "closely approaching
advanced age" category.  Under grid rule 202.13 applicable to this category, plaintiff would also
be found not disabled.

1 LEGAL STANDARDS

2          The court reviews the Commissioner's decision to determine whether (1) it is

3 based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

4 the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

5 Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

6 Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

7 as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

8 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The

9 ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

10 resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations

11 omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more

12 than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

13 The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir.

14 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

15 conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may

16 not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.;

17 see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports

18 the administrative findings, or if there is conflicting evidence supporting a finding of either

19 disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d

20 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was

21 applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

22 ANALYSIS

23      A.  Severity of Impairment

24          Plaintiff contends the ALJ committed error at step two in the sequential analysis

25 by not identifying plaintiff's eczema as a "severe" impairment.  At step two of the sequential

26 evaluation, the ALJ determines whether the claimant has a medically "severe" impairment or

4

combination of impairments.  See 20 C.F.R. § 416.920(a)(4)(ii); see also Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996).  An impairment is severe when it significantly limits a claimant's "physical or mental ability to do basic work activities" and lasted or is expected to last "for a continuous period of at least 12 months."  See 20 C.F.R. §§ 416.920(a)(4)(ii), (c), 416.909. Basic work activities refer to "the abilities and aptitudes necessary to do most jobs."[4]  20 C.F.R. § 416.921(b).

Although centered around the term "severe," "the step-two inquiry is a de minimis screening device to dispose of groundless claims."  See Smolen, 80 F.3d at 1290.  The purpose is to identify "at an early stage those claimants whose medical impairment is so slight that it is unlikely they would be disabled even if their age, education, and experience were taken into account."  Bowen, 482 U.S. at 153.  "An impairment or combination of impairments may be found not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citations and quotation marks omitted).

Although the ALJ did not specifically identify plaintiff's eczema as "severe," the ALJ thoroughly reviewed plaintiff's medical records and noted plaintiff's complaints of dry,

---

[4]  The applicable regulation provides examples of such "abilities and aptitudes":

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

1  itchy skin and considered limitations attributable thereto when formulating plaintiff's residual

2  functional capacity.  AT 20, 248, 251, 254, 257, 260, 263.  Because the ALJ found plaintiff has

3  severe impairments at step two of the sequential analysis and proceeded through the sequential

4  analysis to step five, the court finds no basis for reversal in the findings made at step two.

5  Moreover, the court notes that the examining orthopedic physician examined plaintiff's skin in

6  March 2007, close in time to a period when plaintiff's eczema was noted in the medical records

7  as "severe," and assessed no limitations attributable either to plaintiff's eczema or plaintiff's nail

8  fungal infection.  AT 167, 169, AT 260 (June 2007, eczema "severe"), AT 263 (by August 2007,

9  eczema "moderate"), AT 254 (August 2008, eczema characterized as "improved with

10  medications").  Under these circumstances, the failure to characterize plaintiff's eczema as a

11  severe impairment is not a basis for reversal of the ALJ's decision.

12        B.  Development of the Record

13        Plaintiff contends the ALJ failed to properly develop the record with respect to his

14  alleged impairments due to eczema, fungal infection in the nails, and hepatis C.  Disability

15  hearings are not adversarial.  See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The

16  ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel,

17  an ALJ must be "especially diligent in exploring for all relevant facts."  Tonapetyan v. Halter,

18  242 F.3d 1144 (9th Cir. 2001); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (ALJ

19  has duty to develop the record even when claimant is represented).  Evidence raising an issue

20  requiring the ALJ to investigate further depends on the case.  Generally, there must be some

21  objective evidence suggesting a condition that could have a material impact on the disability

22  decision.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Secretary of

23  Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991).  "Ambiguous evidence . . .

24  triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  Tonapetyan v. Halter, 242 F.3d

25  1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288.)  The ALJ can develop the record

26  by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating

1   sources, (2) ordering a consultative examination when the medical evidence is incomplete or

2   unclear and undermines ability to resolve the disability issue; (3) subpoenaing or submitting

3   questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open

4   for supplementation.  See Tonapetyan, 242 F.3d. at 1150.  The ALJ's decision may be set aside

5   due to his failure to develop the record if the claimant can demonstrate prejudice or unfairness as

6   a result of said failure.  Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1991).

7           In this case, the ALJ advised plaintiff as to what records had been submitted to the

8   Commissioner and specifically inquired as to what other medical records plaintiff had regarding

9   his treatment and requested the contact information for plaintiff's treating physicians.  AT 32-33,

10  35-36, 45, 47-49.  Additional medical records were then obtained by the ALJ after the hearing.

11  AT 217, 228, 229, 244.  At the hearing, the ALJ also directed specific questions to plaintiff's

12  eczema, fungal infection, and hepatitis C, inquiring as to treatment and functional limitations

13  claimed by plaintiff to be attributable to these medical conditions.  AT 39-41, 46.  As discussed

14  below, the medical records which were submitted to the Appeals Council[5] include treatment

15  notes related to these ailments and those records do not support a finding that plaintiff was

16  prejudiced by the ALJ's failure to obtain these particular records prior to the issuance of the

17  ALJ's decision.  A consultative examination was also obtained, and the examining physician

18  assessed no functional limitations due to plaintiff's eczema or fungal infection and plaintiff, at

19  the time of the examination in 2007, did not mention any complaints related to hepatitis C.  AT

20  166, 171-172.  The ALJ took appropriate measures to properly develop the record.

21      C.  Credibility

22          Plaintiff further contends that the ALJ improperly discredited his subjective

23  complaints.  The ALJ determines whether a disability applicant is credible, and the court defers

24  to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

25  _____

26  [5] Plaintiff was unrepresented at the hearing but was represented by counsel at the time the request for review was submitted to the Appeals Council.  AT 31-32, 139.

Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

\\\\\

1    The ALJ set forth several reasons for finding plaintiff's claims of limited

2  exertional abilities to be not credible.  AT 22-23.  The ALJ noted that despite plaintiff's claim of

3  severe disabling back pain, the imaging studies demonstrated mild findings and there was no

4  evidence of nerve root compression.  AT 22, 40, 106, 146, 195, 235.  The ALJ also considered

5  Dr. Lewis' evaluation which showed generally good range of motion and full motor strength.  AT

6  22, 169-171.  With respect to plaintiff's allegation of disabling eczema, the ALJ correctly noted

7  that plaintiff did not report taking medications for this allegedly disabling condition.  AT 22, 110,

8  122, 133.  While plaintiff is correct that the medical records indicate plaintiff was prescribed

9  some medications for his skin condition, those records also indicate that with treatment,

10  plaintiff's condition improved.  AT 263, 272.  The ALJ also factored into the credibility analysis

11  the lack of radiological imaging or other laboratory evidence or clinical findings to support

12  plaintiff's claims regarding disabling knee pain.  AT 23.  Also noted was the lack of treatment or

13  any diagnosis of a kidney condition as claimed by plaintiff.  AT 23.  The ALJ also considered the

14  conservative treatment plaintiff was prescribed for his ear pain (attributed in the medical records

15  as "most likely secondary to ear wax") and the head, ear, eye, nose and throat examinations

16  which were within normal limits.  AT 23, 169, 221.  Finally, the ALJ discredited plaintiff's

17  claims of poor memory based on plaintiff's failure to report any such problems to his treating

18  physicians and because of plaintiff's ability to recall details of his treatment from three years

19  prior to the hearing.  AT 23.  In light of all these factors undermining plaintiff's credibility, the

20  ALJ properly found the consulting examining physician's assessment persuasive and the one-

21  time observation of a social security field representative that plaintiff had difficulty removing his

22  wallet due to hand pain as inconsistent with the consultant's opinion.  AT 22, 103.[6]  The factors

23

24    [6]  The ALJ's failure to specifically address the minimal testimony of plaintiff's sister that
when plaintiff had "boils," he walked like a "zombie" is not a basis for reversal of the ALJ's

25  decision.  In this case, the sister's testimony was, at best, cumulative of plaintiff's testimony,
which was properly discredited.  In addition, the sister did not testify as to the duration of

26  plaintiff's "boils" and although indicating plaintiff suffered some pain in association with the

1    considered by the ALJ were all valid and supported by the record.  The ALJ's credibility

2    determination was based on permissible grounds and will not be disturbed.

3         D.  Residual Functional Capacity

4              Plaintiff also contends the ALJ erred in formulating plaintiff's residual functional

5    capacity.  In doing so, plaintiff contends the ALJ improperly relied on the grids to find plaintiff is

6    not disabled.[7]  Social Security Ruling 96-8p sets forth the policy interpretation of the

7    Commissioner for assessing residual functional capacity.  SSR 96-8p.  Residual functional

8    capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R.

9    §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir.

10   1985) (residual functional capacity reflects current "physical and mental capabilities").

11             Plaintiff assigns error to the residual functional capacity finding on the ground

12   that the ALJ erred at step two of the sequential analysis by finding plaintiff's eczema to be non-

13   severe.  Plaintiff reasons that due to the failure of the ALJ to properly develop the record with

14   respect to plaintiff's eczema and hepatitis C, the impact on plaintiff's ability to handle objects

15   and walk on a sustained basis was not properly factored into the assessment of plaintiff's residual

16   functional capacity.  As discussed above, the ALJ committed no error at step two, properly

17   developed the record and properly discredited plaintiff's subjective complaints.  The ALJ

18   _____

     boils, did not testify plaintiff was precluded from walking as required for the performance of
19   light work.

20        [7]  The Medical-Vocational Guidelines ("the grids") are in table form.  The tables present
     various combinations of factors the ALJ must consider in determining whether other work is
21   available.  See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring).  The factors
     include residual functional capacity, age, education, and work experience.  For each combination,
22   the grids direct a finding of either "disabled" or "not disabled."  There are limits on using the
     grids, an administrative tool to resolve individual claims that fall into standardized patterns:
23   "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when
     the grids accurately and completely describe the claimant's abilities and limitations."  Jones v.
24   Heckler, 760 F.2d 993, 998 (9th Cir. 1985).  The ALJ may rely on the grids, however, even when
     a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are
25   not so significant as to impact the claimant's exertional capabilities.  See Polny v. Bowen, 864
     F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983)
26   (requiring significant limitation on exertional capabilities in order to depart from the grids).

1  specifically considered whether plaintiff had nonexertional limitations due to eczema and

2  properly relied on the findings of the consulting orthopedist, Dr. Lewis, who assessed no

3  functional limitations attributable to the fungal infection or eczema.  AT 22, 172.  In that the ALJ

4  properly found plaintiff had no nonexertional limitations, the ALJ properly relied on the grids to

5  find plaintiff is not disabled.

6          E.  Evidence Submitted to Appeals Council

7          Medical records dated January 5, 2010 through August 10, 2010 were submitted

8  to the Appeals Council and made part of the administrative record.  AT 4, 269-285.  The records

9  reflect treatment for plaintiff's eczema and laboratory testing for plaintiff's Hepatitis C infection.

10  This court has reviewed the ALJ's decision under the substantial evidence standard with due

11  consideration of these medical records.  See Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir.

12  2000) (where plaintiff submitted additional materials to the Appeals Council in requesting review

13  of the ALJ's decision, court may properly consider the additional materials because the Appeals

14  Council addressed them in the context of denying plaintiff's request for review); see also

15  Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993) (noting that where the Appeals Council

16  declined to review the decision of the ALJ after examining the entire record, including new

17  material, court considers both the ALJ's decision and the additional materials submitted to the

18  Appeals Council); Brewes v. Commissioner fo Social Sec. Admin, 682 F.3d 1157, 1163 (9th Cir.

19  2012) ("when the Appeals Council considers new evidence in deciding whether to review a

20  decision of the ALJ, that evidence becomes part of the administrative record, which the district

21  court must consider when reviewing the Commissioner's final decision for substantial

22  evidence").

23          The additional records include a note from an office visit dated January 5, 2010

24  (prior to the date of the ALJ's decision) which was previously submitted to, and considered by,

25  the ALJ.  AT 248, 250; cf. AT 274, 275.  The later dated records show that plaintiff's eczema

26  had improved and was considered "stable" by August, 2010.  AT 269, 271, 272.  Plaintiff

1  contends the records demonstrate end liver organ damage but the fibrosis score was 0.31, which

2  is noted on the lab results as Stage F1 (0.27-0.31), with scores less than 0.31 indicating an

3  absence of clinically significant fibrosis.  AT 279, 280.  Even if plaintiff's fibrosis was

4  considered bordering on clinically significant, the records submitted to the Appeals Council do

5  not demonstrate any of the criteria required for Listing 5.05 (presumptive disability due to

6  chronic liver disease).  For instance, the lab testing showed that plaintiff's bilirubin was within

7  normal limits.  AT 279, 285; <u>see</u> Listing 5.05(D) (plaintiff must demonstrate chronic active

8  hepatitis with elevated serum bilirubin).  The records reflect no functional limitations associated

9  with plaintiff's hepatitis C infection.  The court concludes that even with consideration of the

10 additional records, substantial evidence supports the ALJ's decision that plaintiff is not disabled.

11 <u>CONCLUSION</u>

12            For the reasons stated herein, IT IS HEREBY ORDERED that:

13            1.  Plaintiff's motion for summary judgment (dkt. no. 14) is denied;

14            2.  The Commissioner's cross-motion for summary judgment (dkt. no. 19) is

15 granted; and

16            3.  Judgment is entered for the Commissioner.

17  Dated: October 16, 2012

18                                          _____
                                            CAROLYN K. DELANEY
19                                          UNITED STATES MAGISTRATE JUDGE

20

21

22  4
    roe2003.ss

23

24

25

26