IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GLEN ROE,

        Plaintiff,                      No. 2:11-cv-2003 CKD

    vs.

MICHAEL J. ASTRUE,                <u>ORDER</u>
Commissioner of Social Security,

        Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant Commissioner's cross-motion for summary judgment.

<u>BACKGROUND</u>

        Plaintiff, born July 24, 1956, applied on September 11, 2006 for SSI benefits, alleging disability beginning August 1, 2000.[1] Administrative Transcript ("AT") 51, 90-95. Plaintiff alleged he was unable to work due to hand and foot fungus and a "bad back, hip, and left

---

[1] Under the Act, payment of SSI benefits is precluded for any months prior to the month the application was filed, regardless of the alleged onset date of disability.

knee." AT 106.  In a decision dated April 23, 2010, ALJ L. Kalei Fong, determined that plaintiff was not disabled.[2]  AT 17-25.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since September 11, 2006, the application date.
>
> 2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; hypertension; hepatitis C; metacarpal fracture.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

|   |   |   |
|---|---|---|
| | | functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b). |
| | 5. | The claimant is unable to perform any past relevant work. |
| | 6. | The claimant was born on July 24, 1956 and was 50 years old, which is defined as a younger individual 18-49,[3] on the date the application was filed. |
| | 7. | The claimant has at least a high-school education and is able to communicate in English. |
| | 8. | Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. |
| | 9. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. |
| | 10. | The claimant has not been under a disability, as defined in the Social Security Act, since September 11, 2006, the date the application was filed. |

AT 19-24.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in finding plaintiff's eczema non-severe; (2) the ALJ failed to fully and fairly develop the record; (3) the ALJ erred in finding plaintiff's subjective complaints and third party statements not fully credible; and (4) the ALJ erred in determining plaintiff's residual functional capacity ("RFC"). Plaintiff also contends the Appeals Council erred in denying plaintiff's request for review of the ALJ's decision because additional evidence submitted to the Appeals Council should have provided a basis for changing the ALJ's hearing decision.

/////

---

[3] The ALJ mischaracterized plaintiff as a "younger individual "and applied grid rule 202.20 to find plaintiff not disabled. Plaintiff's age of 50 places him in the "closely approaching advanced age" category. Under grid rule 202.13 applicable to this category, plaintiff would also be found not disabled.

3

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Severity of Impairment

Plaintiff contends the ALJ committed error at step two in the sequential analysis by not identifying plaintiff's eczema as a "severe" impairment. At step two of the sequential evaluation, the ALJ determines whether the claimant has a medically "severe" impairment or

combination of impairments. See 20 C.F.R. § 416.920(a)(4)(ii); see also Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996). An impairment is severe when it significantly limits a claimant's "physical or mental ability to do basic work activities" and lasted or is expected to last "for a continuous period of at least 12 months." See 20 C.F.R. §§ 416.920(a)(4)(ii), (c), 416.909. Basic work activities refer to "the abilities and aptitudes necessary to do most jobs."[4] 20 C.F.R. § 416.921(b).

Although centered around the term "severe," "the step-two inquiry is a de minimis screening device to dispose of groundless claims." See Smolen, 80 F.3d at 1290. The purpose is to identify "at an early stage those claimants whose medical impairment is so slight that it is unlikely they would be disabled even if their age, education, and experience were taken into account." Bowen, 482 U.S. at 153. "An impairment or combination of impairments may be found not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citations and quotation marks omitted).

Although the ALJ did not specifically identify plaintiff's eczema as "severe," the ALJ thoroughly reviewed plaintiff's medical records and noted plaintiff's complaints of dry,

---

[4] The applicable regulation provides examples of such "abilities and aptitudes":

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

5

itchy skin and considered limitations attributable thereto when formulating plaintiff's residual functional capacity. AT 20, 248, 251, 254, 257, 260, 263. Because the ALJ found plaintiff has severe impairments at step two of the sequential analysis and proceeded through the sequential analysis to step five, the court finds no basis for reversal in the findings made at step two. Moreover, the court notes that the examining orthopedic physician examined plaintiff's skin in March 2007, close in time to a period when plaintiff's eczema was noted in the medical records as "severe," and assessed no limitations attributable either to plaintiff's eczema or plaintiff's nail fungal infection. AT 167, 169, AT 260 (June 2007, eczema "severe"), AT 263 (by August 2007, eczema "moderate"), AT 254 (August 2008, eczema characterized as "improved with medications"). Under these circumstances, the failure to characterize plaintiff's eczema as a severe impairment is not a basis for reversal of the ALJ's decision.

      B.   Development of the Record

          Plaintiff contends the ALJ failed to properly develop the record with respect to his alleged impairments due to eczema, fungal infection in the nails, and hepatis C. Disability hearings are not adversarial. See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (ALJ has duty to develop the record even when claimant is represented). Evidence raising an issue requiring the ALJ to investigate further depends on the case. Generally, there must be some objective evidence suggesting a condition that could have a material impact on the disability decision. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288.) The ALJ can develop the record by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating

6

sources, (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines ability to resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for supplementation.  See Tonapetyan, 242 F.3d. at 1150.  The ALJ's decision may be set aside due to his failure to develop the record if the claimant can demonstrate prejudice or unfairness as a result of said failure.  Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1991).

In this case, the ALJ advised plaintiff as to what records had been submitted to the Commissioner and specifically inquired as to what other medical records plaintiff had regarding his treatment and requested the contact information for plaintiff's treating physicians.  AT 32-33, 35-36, 45, 47-49.  Additional medical records were then obtained by the ALJ after the hearing.  AT 217, 228, 229, 244.  At the hearing, the ALJ also directed specific questions to plaintiff's eczema, fungal infection, and hepatitis C, inquiring as to treatment and functional limitations claimed by plaintiff to be attributable to these medical conditions.  AT 39-41, 46.  As discussed below, the medical records which were submitted to the Appeals Council[5] include treatment notes related to these ailments and those records do not support a finding that plaintiff was prejudiced by the ALJ's failure to obtain these particular records prior to the issuance of the ALJ's decision.  A consultative examination was also obtained, and the examining physician assessed no functional limitations due to plaintiff's eczema or fungal infection and plaintiff, at the time of the examination in 2007, did not mention any complaints related to hepatitis C.  AT 166, 171-172.  The ALJ took appropriate measures to properly develop the record.

C.  Credibility

Plaintiff further contends that the ALJ improperly discredited his subjective complaints.  The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

---

[5] Plaintiff was unrepresented at the hearing but was represented by counsel at the time the request for review was submitted to the Appeals Council.  AT 31-32, 139.

7

1  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make
2  an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad
3  v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be
4  supported by "a specific, cogent reason for the disbelief").
5          In evaluating whether subjective complaints are credible, the ALJ should first
6  consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947
7  F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,
8  the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,
9  medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:
10 (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent
11 testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a
12 prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d
13 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR
14 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity
15 and effect of symptoms, and inconsistencies between testimony and conduct also may be
16 relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure
17 to seek treatment for an allegedly debilitating medical problem may be a valid consideration by
18 the ALJ in determining whether the alleged associated pain is not a significant nonexertional
19 impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may
20 rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458
21 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172,
22 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering,
23 the Commissioner's reasons for rejecting the claimant's testimony must be clear and
24 convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.
25 1999).
26 \\\\\

1         The ALJ set forth several reasons for finding plaintiff's claims of limited
2  exertional abilities to be not credible. AT 22-23. The ALJ noted that despite plaintiff's claim of
3  severe disabling back pain, the imaging studies demonstrated mild findings and there was no
4  evidence of nerve root compression. AT 22, 40, 106, 146, 195, 235. The ALJ also considered
5  Dr. Lewis' evaluation which showed generally good range of motion and full motor strength. AT
6  22, 169-171. With respect to plaintiff's allegation of disabling eczema, the ALJ correctly noted
7  that plaintiff did not report taking medications for this allegedly disabling condition. AT 22, 110,
8  122, 133. While plaintiff is correct that the medical records indicate plaintiff was prescribed
9  some medications for his skin condition, those records also indicate that with treatment,
10 plaintiff's condition improved. AT 263, 272. The ALJ also factored into the credibility analysis
11 the lack of radiological imaging or other laboratory evidence or clinical findings to support
12 plaintiff's claims regarding disabling knee pain. AT 23. Also noted was the lack of treatment or
13 any diagnosis of a kidney condition as claimed by plaintiff. AT 23. The ALJ also considered the
14 conservative treatment plaintiff was prescribed for his ear pain (attributed in the medical records
15 as "most likely secondary to ear wax") and the head, ear, eye, nose and throat examinations
16 which were within normal limits. AT 23, 169, 221. Finally, the ALJ discredited plaintiff's
17 claims of poor memory based on plaintiff's failure to report any such problems to his treating
18 physicians and because of plaintiff's ability to recall details of his treatment from three years
19 prior to the hearing. AT 23. In light of all these factors undermining plaintiff's credibility, the
20 ALJ properly found the consulting examining physician's assessment persuasive and the one-
21 time observation of a social security field representative that plaintiff had difficulty removing his
22 wallet due to hand pain as inconsistent with the consultant's opinion. AT 22, 103.[6] The factors

---

[6] The ALJ's failure to specifically address the minimal testimony of plaintiff's sister that when plaintiff had "boils," he walked like a "zombie" is not a basis for reversal of the ALJ's decision. In this case, the sister's testimony was, at best, cumulative of plaintiff's testimony, which was properly discredited. In addition, the sister did not testify as to the duration of plaintiff's "boils" and although indicating plaintiff suffered some pain in association with the

considered by the ALJ were all valid and supported by the record. The ALJ's credibility determination was based on permissible grounds and will not be disturbed.

### D.  Residual Functional Capacity

Plaintiff also contends the ALJ erred in formulating plaintiff's residual functional capacity. In doing so, plaintiff contends the ALJ improperly relied on the grids to find plaintiff is not disabled.[7] Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

Plaintiff assigns error to the residual functional capacity finding on the ground that the ALJ erred at step two of the sequential analysis by finding plaintiff's eczema to be non-severe. Plaintiff reasons that due to the failure of the ALJ to properly develop the record with respect to plaintiff's eczema and hepatitis C, the impact on plaintiff's ability to handle objects and walk on a sustained basis was not properly factored into the assessment of plaintiff's residual functional capacity. As discussed above, the ALJ committed no error at step two, properly developed the record and properly discredited plaintiff's subjective complaints. The ALJ

---

boils, did not testify plaintiff was precluded from walking as required for the performance of light work.

[7] The Medical-Vocational Guidelines ("the grids") are in table form. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled." There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985). The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities. See Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

specifically considered whether plaintiff had nonexertional limitations due to eczema and properly relied on the findings of the consulting orthopedist, Dr. Lewis, who assessed no functional limitations attributable to the fungal infection or eczema. AT 22, 172. In that the ALJ properly found plaintiff had no nonexertional limitations, the ALJ properly relied on the grids to find plaintiff is not disabled.

### E. Evidence Submitted to Appeals Council

Medical records dated January 5, 2010 through August 10, 2010 were submitted to the Appeals Council and made part of the administrative record. AT 4, 269-285. The records reflect treatment for plaintiff's eczema and laboratory testing for plaintiff's Hepatitis C infection. This court has reviewed the ALJ's decision under the substantial evidence standard with due consideration of these medical records. See Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (where plaintiff submitted additional materials to the Appeals Council in requesting review of the ALJ's decision, court may properly consider the additional materials because the Appeals Council addressed them in the context of denying plaintiff's request for review); see also Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993) (noting that where the Appeals Council declined to review the decision of the ALJ after examining the entire record, including new material, court considers both the ALJ's decision and the additional materials submitted to the Appeals Council); Brewes v. Commissioner fo Social Sec. Admin, 682 F.3d 1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence").

The additional records include a note from an office visit dated January 5, 2010 (prior to the date of the ALJ's decision) which was previously submitted to, and considered by, the ALJ. AT 248, 250; cf. AT 274, 275. The later dated records show that plaintiff's eczema had improved and was considered "stable" by August, 2010. AT 269, 271, 272. Plaintiff

contends the records demonstrate end liver organ damage but the fibrosis score was 0.31, which is noted on the lab results as Stage F1 (0.27-0.31), with scores less than 0.31 indicating an absence of clinically significant fibrosis.  AT 279, 280.  Even if plaintiff's fibrosis was considered bordering on clinically significant, the records submitted to the Appeals Council do not demonstrate any of the criteria required for Listing 5.05 (presumptive disability due to chronic liver disease).  For instance, the lab testing showed that plaintiff's bilirubin was within normal limits.  AT 279, 285; see Listing 5.05(D) (plaintiff must demonstrate chronic active hepatitis with elevated serum bilirubin).  The records reflect no functional limitations associated with plaintiff's hepatitis C infection.  The court concludes that even with consideration of the additional records, substantial evidence supports the ALJ's decision that plaintiff is not disabled.

CONCLUSION

    For the reasons stated herein, IT IS HEREBY ORDERED that:

    1.  Plaintiff's motion for summary judgment (dkt. no. 14) is denied;

    2.  The Commissioner's cross-motion for summary judgment (dkt. no. 19) is granted; and

    3.  Judgment is entered for the Commissioner.

Dated: October 16, 2012

    _____
    CAROLYN K. DELANEY
    UNITED STATES MAGISTRATE JUDGE

---

4
roe2003.ss